CALIFORNIA INSURANCE COMPANY, a
New Mexico Corporation,

                    Plaintiff,

        v.

INSURANCE COMMISSIONER OF THE
STATE OF CALIFORNIA RICARDO
LARA, in his official capacity;
CALIFORNIA DEPARTMENT OF
INSURANCE DEPUTY COMMISSIONER
KENNETH SCHNOLL, in his official
capacity; CALIFORNIA DEPARTMENT
OF INSURANCE DEPUTY COMMISSIONER
BRYANT HENLEY, in his official
capacity; and DOES 1-20,

                    Defendants.

No. 2:21-cv-00030 WBS AC


ORDER RE: DEFENDANTS' MOTION
TO DISMISS

----oo0oo----

On March 31, 2021, this court dismissed a lawsuit
brought by affiliates of California Insurance Company ("CIC")--a
California-domesticated workers compensation insurance carrier--
which sought the intervention of this court to effectively halt
the currently-pending conservation of CIC in San Mateo Superior

1

Court.  See Applied Underwriters, Inc. v. Lara, No. 2:20-cv-02096 WBS AC, ___ F. Supp. 3d ___, 2021 WL 1212674, at *14 (E.D. Cal. Mar. 31, 2021).  The court held that it lacked jurisdiction over the Applied Underwriters action based on the prior exclusive jurisdiction doctrine and Younger abstention doctrine.[1]  See id. at **7, 17 (citing Younger v. Harris, 401 U.S. 37 (1971)).

This action is the second collateral attack brought by an affiliate of CIC against the ongoing state conservation proceeding.  (See First Amended Compl. ("FAC") ¶¶ 24, 30, 63 (Docket No. 30).)  In all material respects, this action is identical to the action the court dismissed in its March 31 order.  The plaintiff in this action, California Insurance Company, a New Mexico Corporation ("CIC II"), is the shell company owned and formed by the owner of CIC to effectuate the transfer of CIC's assets to New Mexico.  See (id.); Applied Underwriters, 2021 WL 1212674, at *2.  CIC II is owned and controlled by the same individual (Steven Menzies) who serves as the President, Treasurer, and Director of the Applied Underwriters plaintiffs, and is represented by the same counsel as the Applied Underwriters plaintiffs.  See (FAC ¶ 24); Applied Underwriters, 2021 WL 1212674, at *1.  CIC II's claims are nearly identical to those of the Applied Underwriters plaintiffs: CIC alleges that the same defendants--California Department Insurance ("CDI") officers Ricardo Lara, Kenneth Schnoll, and Bryant Henley, named in their official capacities--violated its rights

---

[1]    The Applied Underwriters plaintiffs appealed the court's decision to dismiss their claims to the Ninth Circuit. (See Case No. 2:20-cv-2096-WBS-AC, Docket Nos. 58-60.)  As of the date of this order, their appeal is still pending.

under the U.S. Constitution based on the same alleged conduct set forth in the Applied Underwriters complaint.  (Compare FAC ¶¶ 36-133 with First Amended Compl. ¶¶ 38-134 ("Applied Underwriters FAC") (Case No. 2:20-cv-2096-WBS-AC, Docket No. 26).)

Crucially, CIC II seeks essentially the same relief in this case as that sought in Applied Underwriters--a federal court order interfering with and potentially terminating the state conservation proceeding.  CIC II's First Amended Complaint seeks an "Order directing defendants to take all necessary steps to prevent further harm to plaintiff."  (FAC Prayer for Relief ¶ E.) While this request is certainly broader and more vague than the plaintiffs' request in Applied Underwriters,[2] CIC II specifically alleges that it is "entitled to injunctive relief enjoining defendants from continuing the Commissioner's bad-faith conservatorship."  (FAC ¶ 171.)  Because CIC II also alleges that "the ongoing conservatorship has damaged and will continue to impose irreparable damage to CIC's"--and therefore CIC II's-- "goodwill and credit" (FAC ¶ 126), injunctive relief directing defendants to "take all necessary steps to prevent further harm" (FAC Prayer for Relief ¶ E) would necessarily entail ending the conservation.

Even the declaratory relief CIC II seeks would result

_____

[2]    The Applied Underwriters plaintiffs' original complaint sought "[a]n Order vacating the Commissioner's conservatorship of CIC" and "enjoining the Commissioner from continuing to hold CIC under conservation."  Applied Underwriters, 2021 WL 1212674, at *3.  After amending their complaint, the plaintiffs sought "[a]n Order directing the Commissioner to take all necessary steps to end CIC's conservatorship pursuant to California Insurance Code § 1012, and enjoining the Commissioner from continuing the conservation."  (Applied Underwriters FAC Prayer for Relief ¶ C).

3

in the same interference with and disruption of state proceedings
that led the court to dismiss plaintiffs' claims in Applied
Underwriters.  See Applied Underwriters, 2021 WL 1212674, at **7,
*14 n.7.  CIC II asks the court to declare unconstitutional, and
thus invalid, the bases of the conservation and the proposed
rehabilitation plan.  (See FAC Prayer for Relief ¶¶ A-D; Pl.'s
Opp'n at 92 (Docket No. 39-1) (stating that CIC II seeks
declarations that "multiple actions, including elements of
defendants' [proposed rehabilitation] plan" are
unconstitutional).)  Declaring defendants' actions and proposed
rehabilitation plan to be unconstitutional would have the same
practical effect as injunctive relief directing defendants to
take all necessary steps to terminate the conservation.  See
Gilbertson v. Albright, 381 F.3d 965, 971 (9th Cir. 2004)
("ordinarily a declaratory judgment will result in the precisely
the same interference with and disruption of state proceedings
that the longstanding policy of limiting injunctions [under
Younger] was designed to avoid").  Artful pleading cannot conceal
the fact that the gravamen of this action, like the Applied
Underwriters action, is to interfere with, and even terminate,
the ongoing state conservation proceeding involving CIC.  See
Applied Underwriters, 2021 WL 1212674, at *7.

     Because this case involves the same underlying state
court proceeding as Applied Underwriters, and similarly seeks to
interfere with, or even terminate, that proceeding, the court
concludes that dismissal is warranted under the prior exclusive
jurisdiction doctrine for the same reasons articulated in the
court's prior order.  See id. at **4-7.

The court further concludes that <u>Younger</u> abstention is also appropriate in this case.  As the court explained in <u>Applied Underwriters</u>, abstention under <u>Younger v. Harris</u> is warranted when a federal court is asked to intervene in or enjoin an ongoing state proceeding which falls into one of three categories: criminal prosecutions, certain civil enforcement proceedings, and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  <u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. 350, 367-68 (1989) ("<u>NOPSI</u>").  Once the court is satisfied that the case falls into one of the three <u>NOPSI</u> categories, the court must further conclude that the three <u>Middlesex</u> factors are met: the conservation must be (1) ongoing, (2) "implicate important state interests," and (3) there must be "an adequate opportunity in the state proceedings to raise constitutional challenges."  <u>Readylink Healthcare, Inc. v. State Compensation Ins. Fund</u>, 754 F.3d 754, 759 (9th Cir. 2014) (quoting <u>Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982)).  Finally, the court must evaluate whether the established exceptions to <u>Younger</u> for "bad faith, harassment, or any other unusual circumstance that would call for equitable relief" are not present.  <u>Younger</u>, 401 U.S. at 45.

The court will explain in greater detail below why the above-listed factors apply with equal force to CIC II's case as they did to the plaintiffs' case in <u>Applied Underwriters</u>.  First, however, the court will address a point raised by CIC II's counsel at oral argument: that abstention in this case would be

particularly inappropriate given the fact that CIC II's claims
arise under 42 U.S.C. § 1983.  Counsel argued that denying CIC II
a federal forum to raise its claims that state officers
instituted the underlying state proceedings in violation of its
federal constitutional rights would be inconsistent with § 1983's
purpose: "to interpose the federal courts between the States and
the people, as guardians of the people's federal rights--to
protect the people from unconstitutional action under the color
of state law, 'whether that action be executive, legislative, or
judicial.'"  Mitchum v. Foster, 407 U.S. 225, 240 (1972) (quoting
Ex Parte Virginia, 100 U.S. 339, 346 (1879)).

　　　　　CIC II correctly points out that § 1983 empowers
federal courts to enjoin ongoing state judicial proceedings if
necessary to prevent great, immediate, and irreparable loss of a
person's constitutional rights.  See Ex Parte Young, 209 U.S.
123, 167 (1908); Mitchum, 407 U.S. at 242-43.  The Supreme Court
has noted, however, that this power does not "question or qualify
in any way the principles of equity, comity, and federalism
[underlying Younger] that must restrain a federal court when
asked to enjoin a state court proceeding."  Id. at 243.  When
Congress enacted § 1983, it was moved by a concern that "state
courts were being used to harass and injure individuals, either
because the state courts were powerless to stop deprivations or
were in league with those who were bent upon abrogation of
federally protected rights."  Id. at 240 (emphasis added).
Consistent with this concern, the Supreme Court has expressly and
repeatedly held that Younger abstention is not appropriate where
the federal plaintiff has shown that "state procedural law barred

6

presentation of [its federal] claims," <u>Pennzoil Co. v. Texaco,</u>
<u>Inc.</u>, 481 U.S. 1, 15 (1987), or that the "state proceeding is
motivated by a desire to harass or is conducted in bad faith."
<u>Juidice v. Vail</u>, 430 U.S. 327, 338 (1977).  Absent some evidence
that the state court will be unable or unwilling to vindicate the
federal plaintiff's constitutional rights, however, the Supreme
Court has instructed that "the normal thing to do when federal
courts are asked to enjoin pending proceedings in state courts is
not to issue such injunctions."  <u>Ohio Civil Rights Comm'n v.</u>
<u>Dayton Christian Schools, Inc.</u>, 477 U.S. 619, 627 (1986) (quoting
<u>Younger</u>, 401 U.S. at 45).

        As the following analysis shows, CIC II has failed to
establish that the ongoing state proceeding is inadequate to hear
its federal constitutional claims, whether because it will bar
presentation of the claims or because the court is proceeding in
bad faith.  Accordingly, the court rejects CIC II's contention
that abstention is inappropriate given the nature of its claims
under § 1983.

        A.    <u>Whether the conservation is a Civil Enforcement</u>
              <u>Proceeding under NOPSI</u>

        The Supreme Court has indicated that, while not every
civil enforcement proceeding warrants <u>Younger</u> abstention, the
type of civil enforcement proceedings from which the court must
abstain are "'akin to a criminal prosecution' in 'important
respects.'"  <u>Sprint Comms., Inc. v. Jacobs</u>, 571 U.S. 69, 79
(2013) (quoting <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 604
(1975)).  While the Court has not "prescribe[ed] criteria that
are always required," it has "described the characteristics of

[these] quasi-criminal enforcement actions in general terms by noting features that are typically present." Bristol-Myers Squibb Co. v. Connors, 979 F.3d 732, 735-36 (9th Cir. 2020). Such characteristics include that the enforcement action was

> initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.

Id. (quoting Sprint, 571 U.S. at 79 (citations omitted)).

Because this case involves the same underlying conservation proceeding as Applied Underwriters, the court's conclusion that the conservation qualifies as the type of civil enforcement proceeding from which the court must abstain applies here with equal force. See Applied Underwriters, 2021 WL 1212674, at **8-9. As the court previously described, California Insurance Code § 1011 authorizes the State's Insurance Commissioner, "acting under and within [the State's] police power," Carpenter v. Pac. Mut. Life Ins. Co. of Cal., 10 Cal. 2d 307, 331 (Cal. 1937), to commence conservation proceedings if an insurer has conducted one or more actions set forth by statute: if the insurer "has violated its charter or any law of the state," Cal. Ins. Code § 1011(e), if an "officer or attorney in fact of the [insurer] has embezzled, sequestered, or wrongfully diverted any of the assets of the [insurer]," id. at § 1011(g), if the insurer has not "compl[ied] with the requirements for the issuance to it of a certificate of authority," id. at § 1011(h), if the insurer, "without first obtaining the consent in writing

of the commissioner, has transferred, or attempted to transfer, substantially its entire property or business or, without consent, has entered into any transaction the effect of which is to merge, consolidate, or reinsure substantially its entire property or business in or with the property or business of any other person," id. at § 1011(c), if the insurer is found to be in a "condition that makes its further transaction of business hazardous to its policyholders," id. at § 1011(d), or if the insurer is found to be insolvent, id. at § 1011(i).

Section 1011 therefore provides the Commissioner with a tool to enforce various provisions of the Insurance Code on behalf of the State, and to protect the public once he determines that an insurer has committed a "wrongful" or harmful act, as set forth by statute. See Cal. Ins. Code § 1011; (Def.'s Req. for Judicial Notice ("Def.'s RJN"), Ex. 4, Superior Court's Order Denying CIC's Application to Vacate the Conservation Order, at 4 ("The Legislature has given the Commissioner the discretion to deal with this case under either section 1011 or section 1215.2 and the choice of enforcement tool is [his] to make." (emphasis added)) (Docket No. 34)).[3] Some of § 1011's authorizing provisions are "in aid of and closely related to criminal statutes," Herrera v. City of Palmdale, 918 F.3d 1037, 1044 (9th Cir. 2019), including Insurance Code § 1633, which provides for criminal penalties for any person who transacts insurance without

---

[3] The court takes judicial notice of Exhibits 4-8 of defendants' Request for Judicial Notice, which consist of filings in the San Mateo County Superior Court, on the ground that they are public records not subject to reasonable dispute. See Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

9

a valid license.  See Cal. Ins. Code § 1633.

          Further, only the Commissioner may institute a
conservation--the statute does not provide for enforcement by
private citizens.  See Sprint, 571 U.S. at 80 (holding that
Younger did not apply because "a private corporation, Sprint,
initiated the action . . . no state authority conducted an
investigation into Sprint's activities"); ReadyLink Healthcare,
Inc. v. State Compensation Ins. Fund, 754 F.3d 754, 760 (9th Cir.
2014) (holding that Younger did not apply to state court
proceedings because the proceedings involved a dispute between
private parties, which was adjudicated by a state officer).  To
do so, the Commissioner must file a verified application with the
Superior Court showing that any of the conditions set out in
§ 1011 exist--akin to a "formal complaint or charges"--which
often comes as the result of an investigation by the Commissioner
or his office.  See Sprint, 571 U.S. at 79-80.  Upon making such
a showing, the Commissioner may obtain from the Superior Court an
order which sanctions the insurer by "vesting title to all the
assets" of the insurer in the Commissioner and "enjoining the
[insurer] and its officers, directors, agents, servants, and
employees from the transaction of its business or disposition of
its property."  Cal. Ins. Code § 1011; see Sprint, 571 U.S. at 80
n.6 (rejecting distinction between "coercive" and "remedial"
sanctions due to the ease of manipulation in designation of the
two categories).  California conservation proceedings therefore
resemble criminal prosecutions in each of the "important
respects" discussed by the Supreme Court in Sprint and its
progeny.

Plaintiff's argument that California conservation proceedings are not akin to criminal prosecutions because they have "historically been used to rehabilitate or liquidate companies that are insolvent or confronting a risk of insolvency" does not alter this conclusion. (See Pl.'s Opp'n at 73 (Docket No. 39-1).) First, when determining whether a state enforcement action exhibits the characteristics of criminal enforcement actions for purposes of Younger abstention is required, the court must take a categorical approach, rather than "scrutinize[ing] the particular facts" of individual proceedings. See Bristol-Myers Squibb, 979 F.3d at 737 ("What matters for Younger abstention is whether the state proceeding falls within the general class of quasi-criminal enforcement actions--not whether the proceeding satisfies specific factual criteria."). The plain language of § 1011 indicates that a conservation may be initiated for a number of reasons unrelated to financial solvency. See Cal. Ins. Code § 1011. These may include violations of California law or the insurer's own charter, Cal. Ins. Code § 1011(e), attempts to merge with another insurer without the written consent of the Commissioner, id. at § 1011(c), or failure to comply with the requirements for the issuance of a certificate of authority or if a certificate of authority has been revoked, id. at § 1011(h).

Second, even the provisions of § 1011 authorizing a conservation based on the financial health of an insurer are inextricably linked to California laws requiring adequate capitalization, reserves, and other mandates governing the company's relationship to its policyholders, and thus function as

a tool to sanction insurers for wrongful conduct. <u>See, e.g.</u>, Cal. Ins. Code § 923.5 ("Each insurer transacting business in this state shall at all times maintain reserves in an amount estimated in the aggregate to provide for the payment of all losses and claims for which the insurer may be liable . . . .").

Because the underlying conservation proceeding exhibits the general characteristics of the type of civil enforcement proceeding for which abstention is warranted, and because CIC II has not provided the court with any basis upon which to distinguish this case, the court re-affirms its conclusion from <u>Applied Underwriters</u> that the ongoing conservation proceeding falls within the second <u>NOPSI</u> category for civil enforcement proceedings. <u>See</u> <u>NOPSI</u>, 491 U.S. at 367-68.

B. <u>Whether the Middlesex Factors are Satisfied</u>

As was the case in <u>Applied Underwriters</u>, CIC II does not dispute that the underlying state proceeding is still ongoing, and thus that the first <u>Middlesex</u> factor is met. <u>See</u> <u>Applied Underwriters</u>, 2021 WL 1212674, at *11. Additionally, because the state is in the same enforcement posture as it was in <u>Applied Underwriters</u>, the court concludes that the state's interest in enforcing its insurance laws again satisfies the second <u>Middlesex</u> factor. <u>See</u> <u>id.</u> at **11-12.

As to the third factor, the court again concludes that the conservation proceeding will provide CIC II with a sufficient forum for raising its federal constitutional challenges. <u>See</u> <u>id.</u> at **12-14. The inquiry for the court is whether "state law clearly bars the interposition of the constitutional claims." <u>Lebbos v. Judges of Superior Court,</u> 883 F.2d 810, 815 (9th Cir.

1989) (quoting Middlesex, 457 U.S. at 432).  This factor "does
not turn on whether the federal plaintiff actually avails himself
of the opportunity to present federal constitutional claims in
the state proceeding, but rather whether such an opportunity
exists."  Herrera, 918 F.3d at 1046; Canatella v. Cal., 404 F.3d
1106, 1111 (9th Cir. 2005).  "[T]he burden on this point rests on
the federal plaintiff to show 'that state procedural law barred
presentation of [its] claims.'"  Pennzoil, 481 U.S. at 14 (1987).

        In Applied Underwriters, the plaintiffs argued that the
third Middlesex factor was not met because they were not parties
to the ongoing conservation, and thus could not influence the
proceeding or present their constitutional arguments to the state
court.  See Applied Underwriters, 2021 WL 1212674, at *12.  The
court rejected this argument because, as close affiliates of CIC,
the plaintiffs had been expressly invited by the Superior Court
to submit any objections--constitutional or otherwise--that they
had to the proposed rehabilitation plan in writing and orally at
the court's hearing on the Commissioner's application to approve
the plan.  See id.  Further, the court found that CIC would be
able to adequately represent the plaintiffs in the conservation
because it was controlled by the same individuals as the
plaintiffs, and because all of the plaintiffs' alleged injuries
ultimately stemmed from the same conservation order and proposed
rehabilitation plan that the Commissioner sought to impose on
CIC.  See id. at *13.

        CIC II does not seriously dispute that it will be able
to influence the ongoing conservation proceeding in the same
manner as the Applied Underwriters plaintiffs.  (See Pl.'s Opp'n

13

at 85-92.)  CIC II is also a close affiliate of CIC, and is subject to the same management and control; CIC II has therefore also been expressly invited by the Superior Court to participate in the proceeding, and will have its interests adequately represented by CIC, given that all of its alleged injuries stem from the harm the conservation has allegedly done to CIC.  See id.

The same considerations articulated by the court in Applied Underwriters regarding the ability of CIC II to present its constitutional claims to the Superior Court therefore govern in this case.  As the court previously explained, "California case law shows that constitutional objections may be raised in a motion to lift the conservation, in conjunction with the Superior Court's review of the proposed rehabilitation plan, or on subsequent appeals from decisions of the Superior Court."  Id. at **13-14 (citing Carpenter, 10 Cal. 2d at 328-29; In re Exec. Life Ins. Co., 32 Cal. App. 4th 344, 391 (2d Dist. 1995); Rhode Island Ins. Co. v. Downey, 95 Cal. App. 2d 220, 238 (1st Dist. 1949)). The Superior Court has already heard and denied an application filed on behalf of CIC and CIC II to vacate the conservation, the California Court of Appeal has already heard and denied CIC's application for interlocutory review, and, as noted above, CIC II has been expressly invited by the Superior Court to present its objections to the proposed rehabilitation plan as part of the court's consideration of whether to approve the plan.  See id. at 14.  Additionally, since the court issued its March 31 order, the Superior Court has heard a request to conduct discovery filed by attorneys representing CIC and CIC II, and authorized the

requested discovery.  (See Def.'s RJN, Exs. 6-7.)

As the conservation progresses, CIC II "will be free to pursue interlocutory review of the Superior Court's orders through emergency writ . . . or other appellate review of the Superior Court's decisions within the California court system and, ultimately, the United States Supreme Court."  Id.; see also Huffman v. Pursue, Ltd., 420 U.S. 592, 605 (1975) ("A civil litigant may, of course, seek review in [the U.S. Supreme Court] of any federal claim properly asserted in and rejected by state courts.").  This court therefore again concludes that the conservation has and will continue to provide an adequate opportunity to raise federal constitutional challenges.[4]  See Middlesex, 457 U.S. at 437.  If anything, the fact that the Superior Court has permitted CIC to conduct discovery regarding the grounds for the conservation, as well as the process utilized by defendants to develop the proposed rehabilitation plan, in advance of the hearing on the plan only bolsters the court's conclusion that Younger abstention is appropriate in order to "give [the] state[] the first opportunity--but not the only, or last--to correct those errors of a federal constitutional dimension that infect its proceedings."  Applied Underwriters, 2021 WL 1212674, at *16 n.8 (quoting Diamond "D" Const. Corp. v.

---

[4]    The Ninth Circuit has articulated an "implied fourth requirement that the federal court action would enjoin the proceeding, or have the practical effect of doing so."  Potrero Hills Landfill, Inc. v. Cnty. of Solano, 657 F.3d 876, 882 (9th Cir. 2011).  For the reasons articulated above that CIC II's requested relief would have the practical impact interfering with and potentially terminating the state conservation proceeding, the court finds that this implied requirement is met here.

15

McGowan, 282 F.3d 191, 200 (2d Cir. 2002)).

C. <u>Younger</u> Exceptions for "Bad Faith" and "Irreparable Injury"

Even if all the requirements for <u>Younger</u> abstention have been met, the Supreme Court has stated that a federal court must nevertheless intervene in a state proceeding upon a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." <u>See Younger</u>, 401 U.S. at 45. "A plaintiff who seeks to head off <u>Younger</u> abstention bears the burden of establishing that one of the exceptions applies." <u>Diamond "D"</u>, 282 F.3d at 198 (citations omitted).

1. <u>Bad Faith</u>

As the court noted in <u>Applied Underwriters</u>, the "bad faith" exception to <u>Younger</u> abstention is narrow: "[o]nly in cases of <u>proven</u> harassment or prosecutions undertaken by officials in bad faith without hope of obtaining a valid conviction ... is federal injunctive relief against pending state prosecutions appropriate." <u>Perez v. Ledesma</u>, 401 U.S. 82, 85 (1971) (emphasis added). Accordingly, "[t]here is no case since <u>Younger</u> was decided in which the [Supreme] Court has found that the exception for bad faith or harassment was applicable." Wright & Miller, 17B Fed. Prac. & Proc. Juris. § 4255 (3d ed.).

CIC II does not provide any factual basis upon which to distinguish the court's analysis of whether bad faith applies from the analysis it provided in <u>Applied Underwriters</u>. CIC II's complaint is based on the same alleged actions of the Commissioner, which CIC II again argues were performed in bad faith and in retaliation for CIC's exercise of its constitutional

rights.  (See Def.'s Opp'n at 94-102); Applied Underwriters, 2021 WL 1212674, at *15.

CIC II's complaint therefore suffers from the same defect identified in the court's prior order: while CIC II alleges that the Commissioner acted in bad faith in pursuing the underlying conservation, it does not allege that the state court has acted in bad faith or "in league," Mitchum, 407 U.S. at 242-43, with defendants to deprive it of its federal constitutional rights.  See Juidice, 430 U.S. at 338.  Nor does CIC II allege that the Commissioner has defied state judicial orders or acted in a way that would indicate that the state court is "powerless" to stop the Commissioner from acting unconstitutionally.  See generally (FAC); Younger, 401 U.S. at 47-48 (citing Dombrowski v. Pfister, 380 U.S. 479 (1965) for the proposition that defiance of state court orders by prosecutor would indicate bad faith such that abstention would not be warranted).

To the contrary, the Commissioner has received judicial authorization before acting from the Superior Court or California Court of Appeal--which, again, CIC does not allege have themselves acted in bad faith--at every turn.  See Applied Underwriters, 2021 WL 1212674, at *15 (noting that the Superior Court reviewed the Commissioner's application for an order appointing him conservator of CIC, affirmed its decision to impose the conservation by denying CIC's motion to vacate the conservation, and issued a procedural order after the Commissioner represented that "a rehabilitation plan may well result in CIC ceasing to do business in California," and that the California Court of Appeal denied CIC's writ petition for

immediate review).  This case is therefore akin to cases in which the Supreme Court has held that the bad faith exception to Younger does not apply.  In Juidice, for instance, the Supreme Court held that Younger abstention was appropriate in a case challenging the constitutionality of New York's statutory contempt procedures because, while the federal plaintiff had alleged that the other parties to the state contempt proceeding had been motivated by bad faith, "there [were] no comparable allegations with respect to appellant justices who issued the contempt orders."  Juidice, 430 U.S. at 338.  Similarly, in Hicks v. Miranda, the Supreme Court reversed a district court's finding of bad faith where the federal defendants had repeatedly relied on valid judicial warrants prior to seizing evidence.  See 422 U.S. 332, 351 (1975) ("Absent at least some effort by the District Court to impeach the entitlement of the prosecuting officials to rely on repeated judicial authorization for their conduct, we cannot agree that bad faith and harassment were made out.").

The court therefore concludes that the bad faith exception to Younger abstention does not apply.

### 2.  Irreparable Injury

Nor does this case satisfy the second Younger exception for irreparable injury.  In cases where a federal court is asked to enjoin an ongoing state prosecution, the Supreme Court has "stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction."  Younger, 401 U.S. at 46.  However, in the Younger context, "the Court [has] also made clear that in view of the fundamental policy

18

against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.'" Id.

In Applied Underwriters, the plaintiffs argued that allegations of deprivations of constitutional violations necessarily qualify as an irreparable injury. See Applied Underwriters, 2021 WL 1212674, at *16. The court rejected that argument out of the concern that, if any alleged deprivation of a constitutional right qualified for the exception to Younger, the exception would risk swallowing the rule. See id.; NOPSI, 491 U.S. at 365 ("it is clear that the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction.").

This time, CIC II argues that the irreparable injury exception applies because this case involves a conservation, which "confers extraordinary control and discretion on state officials to take over a business and its assets." (Pl.'s Opp'n at 103.) Adopting this argument would, again, risk allowing the irreparable injury exception to swallow the rule: any party against whom the Commissioner institutes a conservation (or affiliate of that party) would be able to immediately initiate a parallel proceeding in federal court challenging the bases for the conservation and seeking to litigate many of the same issues that the state court must resolve. This would, in effect, federalize state conservation proceedings, disrupting California's "system[] for regulating and taxing the business of insurance" in a manner inconsistent with Congress' intent that states remain the primary regulators of insurance absent a clear

Congressional statement to the contrary.  <u>See</u> <u>United States Dep't</u> <u>of Treasury v. Fabe</u>, 508 U.S. 491, 507 (1993) (noting that, in passing the McCarran-Ferguson Act, 15 U.S.C. § 1011, <u>et seq.</u>, Congress moved to "restore the supremacy of the States in the realm of insurance regulation"); <u>see also</u> <u>Quackenbush</u>, 517 U.S. 706, 733 (1996) (Kennedy, J. concurring) ("States, as a matter of tradition and <u>express federal consent</u>, have an important interest in maintaining precise and detailed regulatory schemes for the insurance industry." (citing the McCarran-Ferguson Act)).

Finally, plaintiff argues that specific provisions of the proposed rehabilitation plan represent a threat of irreparable injury.  But plaintiff offers no authority showing that these provisions represent a "pressing" and "immediate" need for federal intervention, considering that the Superior Court has not yet determined the content of the plan, and plaintiff itself will have an opportunity to shape the terms of the plan by presenting arguments to the Superior Court (and potentially state appellate courts or the United States Supreme Court) that the terms of the plan are not reasonably related to the basis for the conservation or that the proposed terms violate the federal constitution.  (<u>See</u> Def.'s RJN, Exs. 5, 8.)

This case is distinguishable from cases cited by CIC II in which the irreparable injury exception has been held to apply.  <u>See</u> <u>Arevalo v. Hennessy</u>, 882 F.3d 763 (9th Cir. 2018); <u>Bean v.</u> <u>Matteucci</u>, 986 F.3d 1128 (9th Cir. 2021).  There, the federal plaintiffs sought federal court intervention on the basis that the state court had unconstitutionally deprived them of their physical liberty by failing to provide adequate process before

setting bail, Arevalo, 882 F.3d at 765, and by granting a petition to forcibly administer antipsychotic medication prior to trial, Bean, 986 F.3d at 1135.  In both cases, the Ninth Circuit relied on the fact that the federal plaintiffs had exhausted their state court remedies prior to seeking federal intervention, and that the rights cited by the plaintiffs could not be vindicated at trial or after trial.  Arevalo, 882 F.3d at 767; Bean, 986 F.3d at 1135.  Unlike Arevalo and Bean, this case does not involve an alleged deprivation of physical liberty, and certainly does not involve such a "particularly severe" invasion of liberty as "the forcible injection of antipsychotic drugs." See Bean, 986 F.3d at 1134-35 (noting that antipsychotic drugs "tinker with the mental processes" and thus can "interfere[] with a person's self-autonomy," and can even have "serious, even fatal, side effects").

CIC II's claims are also directed entirely at the ongoing state proceeding regarding issues that can be addressed during the state proceeding and, if necessary, in subsequent appeals to state appellate courts or, ultimately, the U.S. Supreme Court.  See Applied Underwriters, 2021 WL 1212674, at **12-14; Pagtakhan v. Foulk, 2010 WL 3769282, *1 (N.D. Cal. 2010) (holding that irreparable injury exception to Younger was not applicable because federal plaintiff had not exhausted state court remedies: "Pagtakhan's arguments about the impropriety of medicating him should be made to the San Mateo County Superior Court in opposition to the Sell petition").

Accordingly, the court finds that the Younger exception for irreparable injury is not present in this case.  Because the

court has also concluded that the conservation falls under the NOPSI category for civil enforcement proceedings, that the three Middlesex factors are met, that this action would have the practical effect of enjoining the state court proceeding, and that the bad-faith exception also applies, the court concludes that dismissal under Younger is appropriate. See Younger, 401 U.S. at 37.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss (Docket No. 33-1) be, and the same hereby is, GRANTED.

Dated:  July 6, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE